IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM DEAN MORRISON, #1528151,  § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 3:09-CV-1003-N |
| § | | |
| JUDGE ANDREW BENCH, et al., § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the court in implementation thereof, this case has been referred to the United States Magistrate Judge for screening. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a *pro se* civil action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

Parties: Plaintiff is presently confined at the Segovia Unit of the Texas Department of Criminal Justice, Correctional Institutions Division in Edinburg, Texas. Defendants are Hunt County Judge Andrew Bench, Attorney Fred Shelton, Hunt County Clerk Linda Brooks, Parole Officer Bill Roberts, and Hunt County Sheriff Don Anderson and Lt. Snead.

The court did not issue process in this case. However, the magistrate judge sent a questionnaire to Plaintiff to clarify the factual basis for this suit. Plaintiff answered the questionnaire on July 16, 2009.

Statement of the Case: Plaintiff's complaint, as supplemented by the answers to the

questionnaire, alleges a series of events beginning in November 2005, and continuing through his arrest on June 29, 2007 on the basis of two warrants (a parole revocation warrant or blue warrant, and a warrant from Delta County, Texas). Plaintiff remained confined at the Hunt County Jail until September 21, 2007, where he claims he was subjected to unfair treatment and cruel and unusual punishment as a result of personal hatred by county officials. Plaintiff requests monetary damages and credit for time served while held on the basis of the "blue warrant."[1]

Following is a time line of the main events:

(1) In November 2005, Hunt County officials refused to arrest Rick Barnett although he shot and chased Plaintiff in Campbell, Texas.

(2) On December 25, 2005, Plaintiff was wrongfully arrested and given a $25,000 bond. Although the charges were subsequently dismissed on January 30, 2006, a blue warrant was still issued on which Plaintiff was subsequently arrested.

(3) On May 16, 2007, Plaintiff filed a civil suit against Charles Blackstock to dispute his eviction. Shortly thereafter, Lt. Snead, who was a friend of Blackstock, began harassing Plaintiff. According to Plaintiff, he even made up false stories of theft of county gravel to slander Plaintiff and cause his incarceration.

(4) During the pendency of the civil suit, Attorney George Ivan Alexander filed a false statement of fact to slander Plaintiff's name and cause his incarceration and possibly his illegal conviction. Court Clerk Linda Brooks allowed the document to be filed although it was not notarized and bore a forged signature. According to Plaintiff, the forged document was intended "to cause [him] slander, incarceration, and possible illegal conviction for nothing other than to help further Mr. Blackstock's cause, and to satisfy the hatred and personal agenda of County officials . . . ." (Complaint at handwritten attachment at ¶ 3(1)).

(5) In the meanwhile Plaintiff hired Attorney Shelton to assist him in the civil case. On May 29, 2007, however, Shelton relied on the forged document to Plaintiff's detriment in requesting the dismissal of the jury panel. According to Plaintiff, Shelton's conduct deprived him of equal access to the courts and due process, and violated ethical rules.

---

[1] Insofar as Plaintiff requests an investigation, his claim is not cognizable in this civil rights action.

2

    (6) With respect to Judge Bench, Plaintiff alleges that he denied Plaintiff's access to a jury trial and improperly dismissed his civil case.

    (7) Thereafter, on June 29, 2007, Lt. Snead purposefully left Hunt County (his normal jurisdiction) to arrest Plaintiff in Fannin County to protect Blackstock and to prevent Plaintiff from following further legal action against Blackstock. (Answer to Question 16). Lt. Snead then transported Plaintiff to the Hunt County Jail for "personal reasons," to cause him "mental anguish, and [to] exercise control over [his] life because of their prior history." (Answer to Questions 8 and 16). Plaintiff explains that since he was arrested in Fannin County, he should have remained there. (*Id.*).

    (8) While at the Hunt County Jail Plaintiff was "treated badly" by Staff "to make [his] stay as unpleasant as possible." (Answer to Question 16). Plaintiff was detained in solitary confinement for 46 days and required to relocate to cells at the end of the building which were infested by mosquitoes and other bugs. (Answer to Question 18). Prison officials "cut off" his visitation time and stood "directly over [him] at visit[s] and . . . [told him] what [he] could talk about." (*Id.*). Prison officials also gave him inadequate food causing him to loose about 45 pounds. (*Id.*).

    <u>Findings and Conclusions</u>: The court permitted Plaintiff to proceed *in forma pauperis*. His complaint is, thus, subject to screening under 28 U.S.C. § 1915A, which imposes a screening responsibility on the district court. Section 1915A reads in pertinent part as follows:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which *a prisoner* seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b) (emphasis added). *See also* 28 U.S.C. § 1915(e)(2)(B) (applicable to all *in forma pauperis* actions); 42 U.S.C. § 1997e(c)(1) (applicable to prisoner actions challenging conditions of confinement).

    A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32 (1989). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561-63, 127 S. Ct. 1955, 1968-69 (2007).

Plaintiff's claims which arose before May 22, 2007, are time barred. More than two years have elapsed since the events giving rise to those claims occurred.[2] *See Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989); *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (§ 1983 actions in Texas are governed by the two-year personal injury limitations period; court can raise affirmative defense of statute of limitations *sua sponte* in *in forma pauperis* actions); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2009).

Judge Bench is absolutely immune from any claims for monetary damages. Judge Bench's rulings in Plaintiff's civil lawsuit against Blackstock, including the dismissal of the jury panel, were done in his capacity and function as a judge. *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S. Ct. 1099, 1106 (1978); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir. 1995). "Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir. 1994)); *see also Mays v. Sudderth,* 97 F.3d 107, 110 (5th Cir. 1996); *Krueger v. Reimer,* 66 F.3d 75, 76-77 (5th Cir. 1995) (per curiam).

The acts or omissions of Fred Shelton, Plaintiff's retained counsel in the civil case against Blackstock, did not occur under color of state law for purposes of 42 U.S.C. §1983. That section affords redress only for conduct committed by a person acting under color of state law

---

[2] Plaintiff's certificate of inmate trust account is dated May 22, 2009. Thus, May 22, 2009 is the earliest possible date on which Plaintiff could have handed his complaint and motion to proceed *in forma pauperis* to prison officials for mailing. *See Cooper v. Brookshire,* 70 F.3d 377, 379 (5th Cir. 1995) (extending mailbox rule to civil rights cases filed by prisoners).

4

and does not ordinarily involve conduct of a private citizen.  *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004); *Thibodeaux v. Bordelon*, 740 F.2d 329, 332-33 (5th Cir. 1984).[3]

Courts have long recognized that private attorneys, even when appointed by the court, are not official state actors and are generally not subject to suit under § 1983 for independent judgments and actions taken during the course of representing a defendant in a criminal case.[4] *Mills v. Criminal Dist. Court No. 3,* 837 F.2d 677, 679 (5th Cir.1988); *Polk County v. Dodson*, 454 U.S. 312, 324-25, 102 S. Ct. 445, 453 (1981).  The same reasoning applies to attorneys retained to represent a litigant in a civil case.

Although a private individual can be said to act under color of law if he acts in a conspiracy with a state official, Plaintiff has asserted no claim that Shelton engaged in a conspiracy with state actors.  Therefore, any claims against Shelton for violation of constitutional rights lack an arguable basis in law.

Plaintiff's claim against District Court Clerk Linda Brooks fares no better.  Generally

---

[3]    42 U.S.C. § 1983 provides in relevant part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[4]    Private conduct can be charged to the State only if one of the following tests is satisfied: (1) if the private individual or entity "performs a function which is traditionally the exclusive province of the state," or (2) if the state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate," or (3) where the government has "so far insinuated itself into a position of interdependence with the private actor that it was a joint participant in the enterprise."  *Bass v. Parkwood Hosp.,* 180 F.3d 234, 242 (5th Cir. 1999) (quotations and alterations omitted).

court clerks must accept for filing all documents related to a pending case regardless of their substance. As such Brooks could not have declined to file Alexander's document merely because it contained false information and was allegedly forged.

To the extent, Plaintiff alleges Brooks acted at the direction of Judge Bench (an immune judicial officer) in filing the document, she is absolutely immune from an action for damages. *E.g., see Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). In addition, a clerk of court and his deputies are entitled to qualified immunity involving routine actions. *See Clay v. Allen,* 242 F.3d 679, 682 (5th Cir.2001).

The remaining claims relate to Plaintiff's June 29, 2007 arrest and three-month detention at the Hunt County Jail. Contrary to his allegations, Lt. Snead did not lack the authority to arrest Plaintiff in Fannin County. In Texas, a sheriff and his deputies are peace officers authorized to execute an arrest warrant in any county within the State. *See* Texas Code of Criminal Procedure art. 2.12 and 15.06. The answers to the questionnaire and attachments thereto confirm that Lt. Snead arrested Plaintiff on the basis of a parole revocation warrant from the State of Texas, and an arrest warrant from Delta County. (Answer to Question 8 and attached July 25, 2007 Letter from Hunt County Jail Administrator Alford). Therefore, Plaintiff's allegations do not rise to the level of a constitutional violation.

The same applies to Plaintiff's contention that he should not have been transported to the Hunt County Jail. A prisoner does not have the constitutional guarantee to be placed in a particular prison or to prevent his transfer to another prisoner. *Meachum v. Fano*, 427 U.S. 215, 224-5 (1976). *See also Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir. 1996) ("A prisoner has no constitutionally protected interest in a particular facility."); *Young v. Quinlan,* 960 F.2d 351, 358

n. 16 (3d Cir. 1992) (citing *Olim v. Wakinekona,* 461 U.S. 234, 245 (1983)) (holding that a prisoner has no reasonable expectation of being incarcerated in a particular prison)).

Likewise, none of the alleged conditions of confinement was sufficiently serious to rise to a constitutional violation under the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (the objective prong requires a plaintiff to establish that the deprivation was sufficiently serious and looks to the objective conditions themselves). Despite the complaints of inadequate food, weight loss, solitary confinement in an allegedly insect infested cell, and interference with his visitation, Plaintiff was not exposed to conditions which resulted in substantial risk of serious harm to his health or safety. Not all unpleasant conditions of confinement satisfy the objective component: "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Even if Plaintiff could allege sufficient facts to meet the objective prong, he cannot establish that defendants acted with deliberate indifference. *Wilson*, 501 U.S. at 300. As set out in *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994), a prison official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837.

Next Plaintiff sues Sheriff Anderson for detaining him although no criminal charges were pending against him. (Answer to Question 15). Plaintiff's own allegations confirm that Sheriff Anderson detained him pursuant to a facially valid "blue warrant." *See Jackson v. TDCJ Pardon*

7

*& Parole*, 2002 WL 485696 (N.D. Tex. 2002).  Thus, he cannot allege a constitutional violation.

The claims against Parole Officer Roberts fare no better.  Plaintiff alleges Roberts neither allowed him to waive his parole hearing, nor agreed to hold a parole hearing of any type. (Answer to Question 14).  This claim is premised in part on the fact that the Delta County charge was dismissed sometimes after the June 2007 arrest and that Plaintiff was confined only on the basis of the parole revocation warrant. (*Id.*).  A review of TDCJ records reflects that Plaintiff is presently serving a four year sentence for cause number 6912 from Delta County. (*See* Attachment I).  That offense was committed on June 16, 2007, shortly before Plaintiff's June 2007 arrest.  It thus appears that a new charge from Delta County was filed shortly after the dismissal of the charge mentioned in Plaintiff's answer to the questionnaire.

While a parole revocation hearing must be tendered within a reasonable time after a parolee is taken into custody, *see Morrisey v. Brewer*, 408 U.S. 471, 488, 92 S. Ct. 2593 (1972), the constitution does not place a specific time limit especially when other criminal charges are pending.  *See Moody v. Daggett*, 429 U.S. 78, 87-89, 97 S.Ct. 274, 279-80 (1976) (rejecting the argument that an inmate against whom a parole violator's warrant had been issued was entitled to an immediate disposition); *Beck v. Wilkes*, 589 F.2d 901 (5th Cir. 1979) (thirteen-month delay in holding parole revocation hearing was not unconstitutional).

Insofar as Plaintiff seeks to challenge his parole revocation (*see* Answer to Questions 14 and 18), his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364 (1994). The Fifth Circuit Court of Appeals has extended *Heck* to proceedings that call into question the fact or duration of parole.  *See Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995); *McGrew v. Bd. of Pardons & Paroles Div.*, 47 F.3d 158, 161 (5th Cir. 1995).  Under

such circumstances, the § 1983 action is subject to dismissal under *Heck* absent a showing that the confinement resulting from the parole revocation proceeding has been invalidated by a state or federal court. *Littles*, 68 F.3d at 123.

To the extent Plaintiff complains about the legality of his present detention, his claim sounds in habeas and should be dismissed without prejudice to it being reasserted in a petition for writ of habeas corpus after exhausting state remedies.

Plaintiff has been given an opportunity to expound on the factual allegations of his complaint by way of questionnaire. *See Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994) (requiring further development of insufficient factual allegations before dismissal under § 1915(d) is proper); *Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976) (affirming use of questionnaire as useful and proper means for court to develop factual basis of *pro se* plaintiff's complaint). Because he has failed to allege any cognizable claim for relief against the named Defendants under § 1983, the complaint lacks an arguable basis in law and should be dismissed with prejudice as frivolous.

RECOMMENDATION:

For the foregoing reasons, it is recommended that the complaint be dismissed with prejudice as frivolous. *See* 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i), 42 U.S.C. § 1997e(c). To the extent Plaintiff challenges the legality of his detention, his claim should be dismissed without prejudice to be being reasserted in a petition for writ of habeas corpus after exhausting state remedies.

Signed this 21st day of October, 2009.


_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE


NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

ATTACHMENT   I

Case 3:09-cv-01003-N   Document 8   Filed 10/21/09   Page 12 of 13   PageID 81

 Texas Department of Criminal Justice         

# Offender Information Detail

| | |
|---|---|
| **SID Number:** | 04266093 |
| **TDCJ Number:** | 01528151 |
| **Name:** | MORRISON,WILLIAM DEAN |
| **Race:** | W |
| **Sex:** | M |
| **Age:** | 37 |
| **Maximum Sentence Date:** | 2012-07-27 |
| **Current Facility:** | SEGOVIA |
| **Projected Release Date:** | 2010-06-07 |
| **Parole Eligibility Date:** | 2009-01-29 |

**SPECIAL INFORMATION FOR SCHEDULED RELEASE:**

| | |
|---|---|
| **Scheduled Release Date:** | Offender is not scheduled for release at this time. |
| **Scheduled Release Type:** | Will be determined when release date is scheduled. |
| **Scheduled Release Location:** | Will be determined when release date is scheduled. |

| Offense History: | | | | | |
|---|---|---|---|---|---|
| Offense Date | Offense | Sentence Date | County | Case No. | Sentence (Y-MM-DD) |
| 1989-08-09 | BURG OF A HABIT | 2000-04-28 | HUNT | 15,838 | 8-00-00 |
| 2002-12-05 | POSS COCAINE | 2003-09-10 | HUNT | 21,499 | 1-00-00 |
| 2007-06-16 | POSS C/SUB 1-4G | 2008-09-02 | DELTA | 6912 | 4-00-00 |

**Projected Release Date:**

Projected Release Date is the date, which is determined by the TDCJ Institutional Division Records Office, that an offender is projected to be released from incarceration if not released on parole sooner. The calculation of the projected release date is affected by offense title and offense date.

*\* If an offender committed their offense prior to 9/1/1996 and their offense is mandatory supervision eligible, the projected release date is calculated as their scheduled release date to mandatory supervision (if not paroled prior to that), when their time credits (flat time served plus good time earned) equal their total sentence.*
*\* If an offender committed their offense on or after 9/1/1996 and their offense is mandatory supervision eligible, the projected release date is calculated as their scheduled release date to mandatory supervision (if not paroled prior to that), when their time credits (flat time served plus good time earned) equal their total sentence AND the Parole Board has approved their release to mandatory supervision (per the Discretionary*

Case 3:09-cv-01003-N   Document 8   Filed 10/21/09   Page 13 of 13   PageID 82

*Mandatory Supervision law); however, if the Parole Board denies the release on mandatory supervision, the projected release date is recalculated to reflect the same date as the maximum expiration date, which is otherwise known as their discharge date. Subsequent reviews by the Parole Board that result in approval for mandatory supervision release result in the projected release date being recalculated to an earlier date to allow for mandatory supervision release processing to occur.*
*\* If an offender is incarcerated for an offense that by law is non-mandatory supervision eligible, their projected release date matches their maximum expiration date, when their time credits (flat time only) equals their total sentence and they therefore discharge their sentence when released (if not paroled prior to that).*

**Parole Eligibility:**

An offender's parole eligibility is determined by the laws in effect on the date the offense was committed, the offense of conviction, and the sentence. The Board of Pardons and Paroles has complete discretion in parole decisions.

\*\* State Jail offenders are not eligible for parole.

New Search Last Search